IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT,<br><br>　　　　Plaintiff,<br><br>v.<br><br>C.C., as next friend of B.C.,<br><br>　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL CASE NO. 2:11-cv-00224 |

### MEMORANDUM OPINION AND ORDER
### REVERSING THE DECISION OF THE HEARING OFFICER

This case comes before the Court on an appeal by the Corpus Christi Independent School District (CCISD) of the Decision of a Texas Education Agency Special Education Hearing Officer finding that student B.C. was denied a free appropriate public education (FAPE). Pending before the Court are the parties' cross-motions for summary judgment. (D.E. 19 and 20.) For the reasons set forth below, Plaintiff's Motion for Summary Judgment (D.E. 19) is **GRANTED**. Defendant's Motion for Summary Judgment (D.E. 20) is **DENIED**.

### I.    PROCEDURAL BACKGROUND

Defendant C.C., parent and next of friend of B.C., filed a state administrative complaint pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*. Plaintiff alleged that CCISD denied her son a FAPE under the IDEA. (A.R. at 67–70.) A due process hearing was held before the Special Education Hearing Officer pursuant to IDEA Section 1415(f). (*See* Transcript, Admin. R. Vol. IV.) The Hearing Officer found that CCISD failed to properly implement B.C.'s Individualized Education Program (IEP), that B.C.'s IEP

was not administered in the least restrictive environment possible, and that B.C. was denied educational opportunity. (A.R. at 1–11.) The Hearing Officer concluded that B.C. was denied a FAPE and ordered CCISD to provide B.C. compensatory educational services.

Plaintiff CCISD filed an Original Petition appealing the Decision of the Hearing Officer pursuant to Section 1415(i)(2). (D.E. 11-2.) The parties filed cross-motions for summary judgment. (D.E. 19 and 20.) Plaintiff CCISD requests that the Court grant summary judgment in its favor and reverse the Hearing Officer's Decision. Defendant C.C. requests that the Court uphold the Hearing Officer's findings as consistent with the evidence and grant summary judgment in her favor.

## II.     LEGAL STANDARD

Under the IDEA, a school district is responsible for providing its disabled students with a FAPE "that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." § 1400(d)(1)(A). A disabled student's FAPE must be tailored to his or her particular needs by means of an IEP. § 1414(d). The IEP constitutes a written statement prepared at a meeting attended by a representative of the school district, a regular education teacher, a special education teacher, and the disabled student's parents. §§ 1401(14) and 1414(d)(1)(B). These persons are collectively referred to as the Admissions, Review, and Dismissal Committee (ARDC). The IEP must be reviewed and revised by the ARDC at least once a year. § 1414(d)(4)(A)(i).

The IDEA permits a parent who believes his or her disabled child has been denied a FAPE to seek a due process hearing before a state special education hearing officer. § 1415(f)(1)(a). Following the due process hearing, a party aggrieved by the decision of the state

special education hearing officer may file a civil action in federal court. § 1415(i)(2). The IDEA requires the district court to receive the records of the state administrative proceedings and hear additional evidence at the request of either party. § 1415(i)(2)(c); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997). In the case at hand, both parties attached additional evidence to their summary judgment motions. (*See* D.E. 19, Exs. 1–5; D.E. 20, Ex. 1.)

The district court's review of the state special education hearing officer's decision is "virtually de novo." *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003) (quoting *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993)). Although "due weight" is to be given to the hearing officer's findings, the Court "must ultimately reach an independent decision based on a preponderance of the evidence." *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000) (quoting *Cypress-Fairbanks*, 118 F.3d at 252); *see also Teague Indep. Sch. Dist.*, 999 F.2d at 131.

In reviewing the hearing officer's decision, district courts "must be careful to avoid imposing their view of preferable educational methods upon the State." *Bd. of Ed. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 207–08 (1982). State and local authorities have primary responsibility for educating children and "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *See Rowley*, 458 U.S. at 207–08 & n. 30. Accordingly, "[t]he IDEA creates a presumption in favor of a school district's educational plan, placing the burden of proof, by preponderance of the evidence, on the party challenging it." *R.H. v. Plano Ind. Sch. Dist.*, 607 F.3d 1003, 1010–11 (5th Cir. 2010).

### III.   FINDINGS OF FACT

B.C. is a disabled student classified as autistic and speech impaired. (Tr. 18:7–10.) CCISD was required to develop an IEP for B.C. and provide him with a FAPE. The ARDC, which included B.C.'s parent C.C., approved B.C.'s IEP for the 2010–2011 academic year. (R. Ex. 2 at 4; A.R. at 552.)

B.C.'s IEP required him to be mainstreamed for part of the day, to receive special education classes in the school's learning center for certain subjects, and to receive paraprofessional support during all his classes. (R. Ex. 2 at 4; P. Ex. 12 at 48; Tr. 18:8–10, 27:14–15.) B.C.'s IEP required 360 total minutes of instruction per day—including 189 minutes of general education and 159 minutes of special education. (R. Ex. 2 at 4; A.R. at 552.) The IEP specified the minimum daily instructional time for most subject areas, but in the case of science and social studies, it indicated only that B.C. was to receive 0 minutes of science and 0 minutes of social studies per day in a general education environment. (*Id*.)

The Court finds that B.C. received the following general education/mainstream instruction: homeroom from 7:50 to 8:15 a.m.; P.E. from 8:15 to 9:00 a.m. on Monday, Thursday, and Friday; science from 10:15 a.m. to 11:30 a.m.; and social studies from 1:20 to 2:05 p.m. (P. Ex. 9; A.R. at 275; R. Ex. 42; A.R. at 954.) On Monday, Thursday, and Friday, B.C. received 190 minutes of general education instruction—fully satisfying the IEP's requirements. On Tuesdays and Wednesdays, when B.C. received speech and fine arts instruction (which the Court considers special education) instead of P.E., he received only 145 minutes of general education instruction—44 minutes less than required by the IEP.

The Court finds that, each day, B.C. left his social studies class at 2:05 p.m., although the class continued for an additional 10–15 minutes. In lieu of attending the last fifteen minutes of

4

social studies, from 2:05 to 2:20 p.m., B.C. would complete any unfinished work and type a report/log of his activities with the assistance of a paraprofessional. (P. Ex. 42; A.R. at 954; Tr. 176:18–19.)  The Court additionally finds that B.C. received 15 minutes of recess each day. (R. Ex. 42; A.R. at 954; P. Ex. 9; A.R. at 275.)  While the Court finds that the report/log activity and recess time did not count toward B.C.'s special or general education instruction time, they did count toward his total instructional time.  Consequently, the Court finds that B.C. received 369 minutes of instruction each day, which exceeds the total instruction time required in the IEP.

The Court finds that the IEP required B.C. to have a one-to-one paraprofessional accompany him to all his general and special education classes, and that B.C. was almost never without the assistance of a one-to-one paraprofessional in his classes. (R. Ex. 2 at 4; A.R. at 552.)  If B.C.'s paraprofessional was absent or required to leave a class, the school would obtain a substitute paraprofessional. (Tr. 203:21–22, 211:9–21; D.E. 19-2 at 2.)  On one occasion, B.C.'s paraprofessional was required to leave him unattended during science class to assist another student. (Tr. 225:23–25.)  Except for this one occasion, the school was able to secure a substitute paraprofessional for B.C., or when no substitute was available, the special education section leader would assist B.C. (Tr. 211:9–21; D.E. 19-2 at 2.)  Therefore, contrary to the Decision of the Hearing Officer, the Court finds (1) that B.C. was not frequently removed from his general education science class and taken to the special education learning center, and (2) that B.C. was not frequently left unattended in his classes without the assistance of his one-on-one paraprofessional.  B.C. had one-to-one support each school day for all of his general and special education classes—either through his assigned paraprofessional, a substitute paraprofessional, or the school's special education section leader. (Tr. 162:9–13, 185:7–13, 203:21–25, 211:18–21; R. Ex. 40.)

The Court finds that the IEP did not require B.C. to have a one-to-one paraprofessional accompany him at lunch, during recess, or on the bus. (R. Ex. 2 at 4; A.R. at 552.) During the 2010–2011 school year, instead of eating lunch with his paraprofessional in the adaptive education area, B.C. was monitored by school staff and permitted to eat with his peers to allow him to socialize and gain more independence. (Tr. 204:24–205:14.)  In accordance with the IDEA's goal of mainstreaming disabled students to the extent possible, the ARDC sought to increase B.C.'s independence, teach him social-cognitive and communicative skills, and to help him form more effective responses in a social setting. (*See* Instructional Support Plan, A.R. at 558–63.)  Additionally, the Court finds that allowing B.C. to interact with his non-disabled peers without a paraprofessional during these periods did not result in regression, but constituted an important part of the ARDC's efforts to mainstream B.C. and increase his independence. (Tr. 179:18–180:16, 204:4–206:18.)

For approximately two weeks in November 2010, B.C.'s paraprofessional was required to assist a group of adaptive education P.E. students from 2:20 to 2:35 p.m. (Tr. 76:13–18, 110:18–111:6, 116:15–117:14, 142:11–16.)  This coincided with B.C.'s recess period, and B.C. would play outside with the other children while his paraprofessional helped keep an eye on the adaptive education students. (Tr. 116:15–117:14, 214:6–215:20; R. Ex. 42; A.R. at 954.)  As the IEP did not require that B.C. have a one-to-one paraprofessional accompany him during recess, the fact that B.C.'s paraprofessional was assisting other students during this time, in addition to B.C., did not violate the IEP's requirements.

In December 2010, Irene Martinez, B.C.'s paraprofessional, sustained an injury at work and went on medical leave. (Tr. 103:17–105:5, 212:17–23, 223:8–13; R. Ex. 40.)  Following Ms. Martinez' injury, Gloria Tucker served as B.C.'s one-to-one paraprofessional for the

6

remainder of the 2010–2011 school year. (Tr. 162:14–15, 216:11–22; R. Ex. 40.) Accordingly, the Court finds that B.C. was not left without the assistance of a one-on-one paraprofessional following Ms. Martinez' injury.

The Court finds that consistent paraprofessional support was essential to providing B.C. with access to the general education environment and to B.C. receiving educational benefit from his IEP. If left unsupervised during his general education classes, B.C. would sometimes demonstrate inappropriate classroom behavior. (Tr. 31:16–19.) B.C. had difficulty sitting and listening to instructions when he was around other students. (Tr. 32:12–14.) The one-to-one paraprofessional helped keep B.C. focused and reduced the opportunities for inappropriate behavior. (Tr. 31:12–15, 32:8–14.)

The Court finds that B.C. made meaningful progress both academically and socially during the 2010–2011 school year under his IEP. (Tr. 58:19–21, 161:25–162:8, 186:9–22, 187:23–188:2, 204:10–19, 216:11–22; R. Ex. 1 at 5–6, 14–15, 20–21, 27–32, 34–35, 39–45, 61.)

## IV.   ANALYSIS

In its review of the Decision of the Hearing Officer, the Court considers the following issues: (A) whether the Hearing Officer improperly considered issues not raised in C.C.'s request for a due process hearing or at the prehearing conference; and (B) whether B.C.'s IEP was reasonably calculated to provide an educational benefit.

### A.   Whether the Hearing Officer Improperly Considered Certain Issues

Plaintiff argues that C.C. should not have been allowed to raise any issues at the due process hearing or on appeal that were not identified in her due process hearing notice. (D.E. 11-2 at ¶¶ 34 and 38; D.E. 19 at 18–19; D.E. 21 at 3–4; D.E. 24.) Specifically, Plaintiff argues that the Hearing Officer erred in making the following findings, which were not identified in the due process hearing notice: (1) that CCISD improperly shortened B.C.'s school day; (2)

that B.C. would not attend general education classes when his one-to-one paraprofessional was absent; and (3) that B.C.'s instructional day ended at 2:05 p.m. (D.E. 19 at 19.)

Defendant responds that the Hearing Officer's statement of contested issues was consistent with Defendant's pleadings and the issues identified by the Hearing Officer at the pre-hearing conference. (D.E. 22 at 7.) Additionally, Defendant points out that Plaintiff failed to object to the raising of these issues at the pre-hearing conference or to object to any of the evidence presented at the due process hearing. (*Id*. at 8.)

Under IDEA, the "subject matter" of the due process hearing is limited to those issues raised by the party requesting the hearing in the due process hearing notice:

> The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise.

20 U.S.C. § 1415(f)(3)(B). The purpose of this requirement is to promote a full exploration of the issues at the administrative level, to encourage a full development of the factual record at the administrative hearing, and to promote judicial efficiency. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992); *Hope v. Cortines*, 872 F. Supp. 14, 19 (E.D.N.Y. 1995).

Courts have frequently imposed Section 1415(f)(3)(B)'s prohibition against raising new issues at the due process hearing to limit a petitioner from attacking an IEP on procedural grounds, when the petitioner only raised substantive issues in the due process notice, and vice versa. *See, e.g.*, *P.K. ex rel. S.K. v. New York City Dept. of Educ.*, 819 F. Supp. 2d 90 (E.D.N.Y. 2011); *Covington v. Yuba City Unified Sch. Dist.*, 780 F. Supp. 2d 1014, 1022 (E.D. Cal. 2011) ("reject[ing] Plaintiffs' effort to expand the narrow substantive issues presented by [the] case to also include additional procedural grounds"); *Madison Metropolitan School Dist. v. P.R. ex rel.*, 598 F. Supp. 2d 938, 948–49 (W.D. Wis. 2009). Courts have also applied Section 1415(f)(3)(B) to limit petitioners from delving into previously unexplored subject areas not addressed in the

due process notice or at the pre-hearing conference, particularly where the respondent objected to the presentation of these matters before the hearing officer. *See, e.g.*, *James M. ex rel. Sherry M. v. Hawaii*, 803 F. Supp. 2d 1150, 1165 (D. Haw. 2011).

C.C.'s Request for Special Education Due Process Hearing and Required Notice alleged that B.C.'s education had been negatively impacted due to his removal from his regular education classes and CCISD's failure to provide B.C. a paraprofessional at all times during the Fall 2010 semester. (A.R. at 67–68.)  At the pre-hearing conference, the Hearing Officer identified the following issues: "failure to implement his IEP, failure to provide the paraprofessional to him, and pulling him out of regular education classes to accommodate the paraprofessional's schedule." (A.R. at 102–03.)  The Court concludes that the issues to which Plaintiff objects fall within the subject matters identified by the hearing officer at the pre-hearing conference.  Moreover, CCISD did not object to the presentation of evidence on these matters at the due process hearing.  *A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 n. 7 (4th Cir. 2007) ("[F]or issues to be preserved for judicial review they must first be presented to the administrative hearing officer.").  Accordingly, the Court concludes that the Hearing Officer did not err by making findings on the issues objected to by Plaintiff.

### B. Whether the IEP Was Reasonably Calculated to Provide a Meaningful Educational Benefit

A challenge to the appropriateness of a disabled student's IEP can (1) attack the procedures by which the IEP was designed, or (2) assert that the IEP was not reasonably calculated to provide educational benefit to the student. *Cypress-Fairbanks*, 118 F.3d at 248; *Rowley*, 458 U.S. at 201.  The fairness of the procedures by which the IEP was created are not at issue in this case.

9

In determining whether a student's IEP was reasonably calculated to provide educational benefit, the Fifth Circuit has identified four factors the Court must consider:

(1) whether the IEP was individualized based on the student's assessment and performance;
(2) whether the program was administered in the least restrictive environment;
(3) whether the educational services were provided in a coordinated and collaborative manner by the key stakeholders; and
(4) whether the student received academic and non-academic benefits.

*Cypress-Fairbanks*, 118 F.3d at 249; *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d at 347–48. Only the last three factors are relevant to the Court's inquiry in this case.

### 1. Whether B.C.'s IEP was Administered in the Least Restrictive Environment Possible

Defendant C.C. argues that B.C.'s IEP was not administered in the least restrictive environment possible, as B.C. was frequently removed from his general education classes and denied the support of a one-to-one paraprofessional. (A.R. at 30, 32–33.) Plaintiff responds that this is not a least restrictive environment case and Defendant failed to present any evidence on this issue.

Whether B.C. was frequently denied the assistance of a one-to-one paraprofessional and whether he was frequently removed from his regular education classes directly relate to the issue of whether CCISD administered the IEP in the least restrictive environment possible. The accommodation provided B.C. by the ARDC to facilitate his participation in mainstream classes at the school was the full-time assistance of a paraprofessional. The paraprofessional was essential to providing B.C. access to the general education environment. If this accommodation was removed by CCISD, then CCISD failed to administer the IEP in the least restrictive environment possible. Furthermore, this is not a new factual issue or claim that Defendant asserts for the first time, but merely one of the factors set forth by the Fifth Circuit to determine

whether an IEP was reasonably calculated to provide educational benefit. Accordingly, the Court must consider this factor in its analysis.

The IDEA requires that, to the maximum extent appropriate, children with disabilities be provided a FAPE in the least restrictive environment, that is, disabled children should be educated with non-disabled children, and the removal of a child from a regular education environment should only occur when the nature or severity of the child's disability is such that education in a regular classroom setting cannot be satisfactorily achieved, regardless of the use of supplementary aids or services. § 1412(a)(5)(A). The IDEA does not mandate an all-or-nothing educational program for disabled students, but consistent with the Act's preference that disabled students be educated in the least restrictive environment possible, it permits a school district to partially and/or gradually mainstream a disabled child:

> [T]he Act and its regulations require schools to offer a continuum of services. Thus, the school must take intermediate steps where appropriate, such as placing the child in regular education for some academic classes and in special education for others, mainstreaming the child for nonacademic classes only [such as art, music, and P.E.], or providing interaction with [non-disabled] children during lunch and recess. The appropriate mix will vary from child to child and, it may be hoped, from school year to school year as the child develops. If the school officials have provided the maximum appropriate exposure to [non-disabled] students, they have fulfilled their obligation under the [IDEA].

*Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1050 (5th Cir. 1989) (internal citations omitted); *see also Rowley*, 458 U.S. at 181 n. 4 (noting the Act's "preference for 'mainstreaming' handicapped children").

School districts, however, are limited in their ability to meet the educational needs of their disabled students by school budgets, staffing issues, illness, and other day-to-day realities faced by educational administrators. The Court must consider these realities in its analysis and accept that school districts will not always be able to provide disabled students with the best possible education. *See Houston Ind. Sch. Dist. v. V.P.*, 582 F.3d 576, 583 (5th Cir. 2009)

(concluding that a school district "need not provide its disabled students with the best possible education"); *Flour Bluff I.S.D. v. Katherine M.*, 91 F.3d 689, 691 (5th Cir. 1996) ("one of the main concerns of Congress is that the state attempt, as best it can, to mainstream the child"); *CCISD v. Christopher N.*, No. C.A. C-04-318, 2006 WL 870739, at *5–6 (S.D. Tex. Mar. 31, 2006); *Clear Creek Ind. Sch. Dist. v. J.K.*, 400 F. Supp. 2d 991, 995 (S.D. Tex. 2005) (concluding that courts should consider the "realities" that school districts face); *Stacey G. v. Pasadena Indep. Sch. Dist.*, 547 F. Supp. 61, 78 (S.D. Tex. 1982).

The Court finds that B.C. was not frequently removed from his general education courses and that CCISD consistently provided B.C. with a one-to-one paraprofessional in all of his classes as required by the IEP. Therefore, the Court concludes that CCISD administered B.C.'s IEP in the least restrictive environment possible.

        2.    *Whether the Educational Services Were Provided in a Coordinated and Collaborative Manner*

"Actual implementation of the IEP is important." *Clear Creek*, 400 F. Supp. 2d at 995 (citing § 1401(8); *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d at 348; *Socorro Indep. Sch. Dist. v. Angelic Y.*, 107 F. Supp. 2d 761, 767 (W.D. Tex. 2000)). To demonstrate a lack of coordination in providing a student with services, a plaintiff must "show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP." *Houston Ind. Sch. Dist. v. Bobby R.*, 200 F.3d at 349.

In the case at hand, the Court concludes that any failure to implement B.C.'s IEP was *de minimis*. The loss of 44 minutes of general education time two days per week represents 9% of B.C.'s weekly required general education minutes, and less than 5% of B.C.'s total instructional time each week. Such small deviations from a student's IEP are not material. *Compare Catalan*

*v. District of Columbia*, 478 F. Supp. 2d 73, 76 (D.D.C. 2007) ("failure to follow the IEP's requirements to the letter was excusable") and *Savoy v. District of Columbia*, Civil No. 11-145 (CKK), 2012 U.S. Dist. LEXIS 20901, at *28 (D.D.C. Feb. 21, 2012) (finding that "[q]uantitatively, a 3% or ten minute per day deviation is not [] material"), *with Sumter Cty. Sch. Dist. 17 v. Heffernan ex rel. T.H.*, 642 F.3d 478, 481–86 (4th Cir. 2011) (finding that failure to provide 5.0–7.5 out of 15 hrs. of therapy per week, in addition to a failure to use methodology set out in IEP, constituted a material deviation from IEP) and *Van Dyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 823 (9th Cir. 2007) (finding that failure to provide 5 out of 8–10 hrs. per week of math instruction was a "material implementation failure"). Accordingly, the Court concludes that B.C.'s educational services were provided in a coordinated and collaborative manner.

### 3. Whether There Was a Demonstration of Positive Academic and Nonacademic Benefits

One of the most critical factors in determining whether a student's IEP was reasonably calculated to provide a meaningful educational benefit is whether the student actually received some academic and nonacademic benefits from the IEP. *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d at 588–90. CCISD was required to provide B.C. with a "basic floor of opportunity" designed to deliver an educational benefit. *Rowley*, 458 U.S. at 201; *Sylvie M. ex rel. Diane R. v. Bd. of Educ. of Dripping Springs Indep. Sch. Dist.*, 48 F. Supp. 2d 681, 698 (W.D. Tex. 1999). CCISD was not required to provide the best possible education available, and B.C. did not need to improve in every academic and non-academic area to have obtained an educational benefit. *Houston Ind. Sch. Dist. v. Bobby R.*, 200 F.3d at 350; *Cypress-Fairbanks*, 118 F.3d at 247. Thus, the Court's inquiry is not whether there was more that could have been done, but simply whether

CCISD provided a meaningful educational benefit to the student. *Houston Ind. Sch. Dist. v. V.P.*, 582 F.3d at 590.

Defendant cites to C.C.'s testimony that when B.C. was left unattended by his paraprofessional, his behavior and academics regressed. (Tr. 38:15–25.) This does not demonstrate a lack of educational benefit. Plaintiff presented substantial evidence of both academic and social advancement during the 2010–2011 school year. (Tr. 58:19–21, 161:25–162:8, 186:9–22, 187:23–188:2, 204:10–19, 216:11–22; R. Ex. 1 at 5–6, 14–15, 20–21, 27–32, 34–35, 39–45, 61.) Accordingly, the Court concludes that B.C. received positive academic and non-academic benefits under his IEP.

## V. CONCLUSION

The Court concludes that any failure to implement the IEP by CCISD was *de minimis*, that CCISD administered the IEP in the least restrictive environment possible, and that B.C. demonstrated positive academic and non-academic benefits; therefore, B.C.'s IEP was reasonably calculated to provide a meaningful educational benefit and B.C. received a FAPE.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (D.E. 19) is **GRANTED**, and Defendant's Motion for Summary Judgment (D.E. 20) is **DENIED**. The Decision of the Hearing Officer is **REVERSED**. Each party is to bear its own costs, expenses, and attorney's fees.

**ORDERED** this 7th day of June 2012.

_____
**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**